IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

Rodney C. Dean, AIS #244759,

    Plaintiff,

v.

J.C. Gile, Warden, et al.,

    Defendant(s).

CIVIL ACTION NO. _____

2:07CV 342-WKW

## MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION AND STATEMENT OF FACTS

Comes now the Plaintiff, Rodney C. Dean, acting pro se in the above styled cause, and pursuant to Rule 65, Fed. R. Civ. Pr., respectfully requests this Honorable Court grant him a temporary restraining order and/or a preliminary injunction directing the Defendant(s), J.C. Giles, Warden, and Richard Allen, et al., Alabama Department of Corrections to stop cutting hair in front of the chow hall.

Plaintiff would show the Court that it is in the public interest to grant Plaintiff a temporary restraining order or preliminary injunction. **Walling v. Brookland Brainds, Co.**, 152 F.2d 938, 940. Plaintiff alleges that prison officials have violated their own rules and regulations, statutes, or the Constitution. It is always in the public interest that govenmental officials act in a lawful manner. **Cutting hair in front of the prison chow hall violates rules for Public Health Department** regulations.

The Supreme Court has stated that injunctive relief should be "conditioned by the necessities of public interest which [the rules, regulations, or laws...] sought to protect." **Hecht Co. v. Bowles**, 321 U.S. 321, 64 S. Ct. 587 (1944).

The intent of the government in passing it's laws and requiring prison officials to comply with law "is a public interest aspect which cannot be ignored." Id., at 339-340. That if relief is denied Plaintiff will suffer more than prison officials. Plaintiff alleges to this Honorable Court that case law is stronger that the law supporting the Defendants.

In the case of **Dubuc v. Green Oak TP**, 958 F. Supp. 1231 (E.D. Mich. 1997), at page 1243 it says: "In defense of a claim brought pursuant to 42 U.S.C. §1983, a state official exercising discretionary authority is entitled to immunity from suit except where the state actors conduct violated 'clearly established statutory of constitutional rights of which a reasonable person would have known.'" **Harlow v. Fitzgerald**, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); **mackey v. Dyke**, 29 F.3d 1086, 1093-94 (6th Cir. 1994). In performing this analysis, the court must focus on the actions in light of the legal rules which were "clearly established" at the time of the actions in question. **Anderson v. Creighton**, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).

## II. PLAINTIFF'S CLAIM UNDER THE RELIGIOUS FREEDOM REFORMATION ACT

Mr. Dean argues that Defendant violated the Religious Freedom Reformation Act ("RFRA"), 42 U.S.C. § 2000 bb, that provides that:

(A) Goverment shall not sustantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this Section.

(B) Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person –

    (1) Is in furtherance of a compelling government interest; and

    (2) It is the least restrictive means of furthering that compelling government interest.

SEE WARSoldier V. Woodford, 418 F.3d 989 (9th Cir. 2005)

Plaintiff argues he is a Native American prisoner and was "scalped" every time he goes to the prison chow hall on the days that a meal is served that many inmates will eat, i.e. french fries, hot dogs, etc. But, if you are indigent and have no money to pay the barber, you have to put up with this type of cruel treatment and it is humiliating when you have a visit and your wife and/or friend has to see you this way. **Iron Eyes v. Henry**, 907 F.2d 823 (8th Cir. 1990). ("Wells, the inmate barber, related another incident where a Native American prisoner was "scalped" by one of the defendants. His hair was cut to the skin in patches around his ears and in other places was left long like a ponytail. Wells disposition, supra, note 1, at 16-17). If true this makes a mockery of any claim that the defendants were just doing their job in making sure everyone's hair was simply above their collar. Native Americans believe that the hair is tied to communications with God and that without it one cannot get to heaven. Being scalped is a sign of subjugation and humiliation.

**Davie v. Wingard**, cite as 958 F. Supp. 1244 (S.D. Ohio 1997), p. 1252:
IV. Plaintiff's Equal Protection Claim.

[4] Mr. Davie claims that Defendants have violated the Equal Protection Clause of the Fourteenth Amendment because female inmates are not required to keep their hair short. The hair length regulations for female inmates are identical to those for male inmates, except that the regulations for females provide that:

> Hair and styles shall be clean, neatly trimmed, and shall not extend below the middle back area in length. Hair length will be at least two inches in length, unless there is a medical concern. Hair and hairstyles shall not protrude more than three inches from the scalp.

In the instant case, Mr. Dean would argue that ADOC, while cutting hair in front of the chow hall that inmates are allowed "NO" hair, which in turn

(3)

are scalped down to the raw skin without the use of clipper guards, cutting sores and bleeding occurs on some inmates and they cut hundreds of inmates' hair without cleaning their clippers. On Wednesday, this hair blows into the chow hall. Hair carries all kinds of infectious diseases. The officers have to run the barbers off at times, if the Health Department inspector comes into the prison. The officers hurry inmates up and go back to the Shift Office, where they normally cut hair like nothings going on. If you <u>do not</u> believe they scalp you walk through the camp and look at their heads. The only time inmates are supposed to have their hair cut off is at Kilby Induction Center when inmates first come from the county jails to prison.

<u>Dean would also argue</u> that the female inmates are not required to keep their hair short. At Tutwiler Correctional Facility females are allowed to keep their hair length down to their shoulders. This violates the Equal Protection Clause of the Fourteenth Amendment because female inmates are not required to keep their hair short. The hair length regulations for female inmates are not identical to those for male inmates.

**Thompson v. Gibson**, cite as 289 F.3d 1218 (10th Cir. 2002), p. 1220.

13. Constitutional Law at 211(1).

Equal Protection Clause embodies a general rule that <u>states must treat like cases alike</u> but may treat unlike cases accordingly. U.S.C.A. Const. Amend.

P. 1222 Equal Protection Violation

[12-14] The Equal Protection Clause of the Fourteenth Amendment dictates that "no state shall...deny to any person within it's jurisdiction the equal protection of the laws." U.S. Cons. Amend. XIV. This clause embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly. **Crider v. Bd. of County Comm'rs**, 246 F.3d 1285, 1288 (10th Cir. 2001.) Mr. Thompson does not claim that the Defendants treated

(4)

him differently because of any suspect classification and has not proven that the distinction between himself and the other inmates was not reasonably related to some legitimate penological purpose.

**U.S. v. Ellsworth**, cite as 814 F.2d 613 (11th Cir. 1987):

§1983 alleging that the Florida Department of Corrections rule requiring all inmates to shave or cut their hair violated their First Amendment right to freely exercise their religion.

### ALLEGATION #3

Discrimination - with connection to ample supply of hot water, **Matthews v. Peters**, Cite as 818 F. Supp. 224 (N.D. Ill. 1993).

### FACT OF ALLEGATION

In July of 2006, Dorm #8 (now called Dorm D), which houses about 210 inmates, the hot water exchanger burned out for about 3 and 1/2 months. Plaintiff's had "NO" hot water to take showers with which to shave, or mop floors. IN October of 2006 the exchanger was replaced, but the mixer valves that kept the water distributed and mix water up, so all the water in the tank stays hot were not replaced. "My understanding is they cost several hundred dollars." They do not want to pay, thus, only about 10 inmates at a time can take showers for the hot water runs out in 5 to 10 minutes. In September of 2006 inmates signing about 60 signatures and sent a petition asking Warden J.C. Giles to please fix the hot water. Warden Giles told the inmates over five signatures was inciting a riot, and they could all receive disciplinary action. **Matthews v. Peters**, 818 F. Supp. 224 (N.D. Ill 1993). p. 225, quote 2. Civil Rights at key 214(7):

> Prison officials would not be relieved of qualified
> immunity grounds from having to defend inmates lawsuit
> claiming violation of constitutional rights by depriving
> him of hot water while confined in segregation in view
> of showing a deliberate indifference by remediable
> conditions. 42 U.S.C.A. §1983, U.S.C.A. Const. Amend. 8, 14.

What is perhaps more important is that inmates announced (1) that any deprivation (including a single condition of confinement) meets that test if it denies "the minimal civilized measures of life's necessities" (Id. - U.S. at 111 S. Ct. at 2324), (2) that whether the conduct "can be characterized as 'wanton' depends upon the constraints facing the officaial." (id. - U.S. at ___, 111 S. Ct. at 2326[5] and (3) that "the deprivation of a single, identifiable human needs such as food, warmth or exercise (Id. ___ U.S. ___ 111 S. Ct. at 2327) satisfies the already quoted standard. And it is certainly a fair reading of inmates in Dorm 8, which is now Dorm D-1 and D-4, that 9 months without adequate supply of hot water and refusal to fix and often complained of condition was unconstitutional. In March of 2007 inmates put Warden Giles on notice by sending Commissioner Richard Allen a copy of said complaint.

## STATEMENT OF THE FACTS

### PLAINTIFF'S CLAIM FOR PROFILE

On July 18th, I filed out a sick call sllp. They told me to come back the next day to see a doctor. I was not on an appointment list so I go anyway on the 19th. The nurse immediately jumps on my about missing the doctor's appointment. I told her i was not given one. She looks on the doctor's appointment schedule and then says she forgot to put me on it. She sees sores that have turned to staph infections on my face, said all I wanted was to get a shaving profile. I said I want the sores treated. She refused me to see the doctor or to treat my sores. She wrote me a shaving profile. I again (6 months) said I want the sores treated. they burned very bad. She then got me some benzoil peroxide, and handed it to me. Then told me to get out of her office. Her name is B. Luke,

I managed to clean up the staph on my face by using a hot cloth several times a day. The staph was still in my blood and spread to my back. (I have 3 scars on my face from the staph infected sores). C.O. Terry observed me exiting the shower and saw the staph sore on my back, and asked if I wanted it taken care of. I was relieved to have someone care, I immediately answered YES!)

They called the doctor (he did not come). He instructed the nurse (not Luke) to take a culture. I never heard the results. The nurse prescribed Bactrim - Sulfur and Motrin, 3 am and 3 pm. The third day I stopped taking the meds because of severe stomach pain. New sick call to change the meds. The Motrin was killing my ulcers. I do not remember ever seeing a doctor about this condition. It eventually cleared up.

The Profile ran out Jan. 19, 2007. My face immediately broke out again but I continued to shave. Burning and itching, along with extreme pain at times. I did not go to sick call because of the harsh treatment given to me before by Nurse B. Luke. I came up for a yearly physical Feb. 23. The doctor saw me on the 28th and immediately ordered a shaving profile for 90 days. I have not been allowed to keep it 1/8" the whole time I have had the profile. They make me shave daily with no guard or sanitary equipment.

The Dept. of Corrections violates their rules and regulations by not following profile prescribed by the doctor and not providing 1/8" clipper guards. THis has caused detrimental damage to Plaintiff's face causeing staph infection and defiance of explicit medical instructions, resulting in serious and obvious injuries scarring of the face and pain.

See **Martinelli v. Dugger**, 817 F.2d 1499 (11th Cir.) p. 1500"

4. Constitutional Law at key 84.5(14)

(7)

Medical exemption, which permitted one-quarter inch beards where staff physician determined that shaving would be detrimental to inmates health. It would be better to trim beard rather than no beard at all.

### RELIEF SOUGHT

(1) Plaintiff respectfully requests a trial by jury.

(2) Plaintiff requests a declaratory judgment on all issues and claims.

(3) Plaintiff seeks an injunction, directing ADOC to immediately stop cutting hair in from of the prison chow hall.

(4) Plaintiff requests a compensation judgment of $1,000,000 and double punitive judgement.

(5) Plaintiff seeks a judgement directing Defendant to reimburse Plaintiff of all costs incurred in the prosecution of this meritorious cause of action.

(6) Plaintiff seeks any and all other forms of relief that he is entitled to .

(7) Plaintiff sues in <u>individual</u> and <u>official capacity</u>, civil rights 207(1).

Done this 18 day of April, 2007.

_Rodney Dean 244759_
Rodney Dean, AIS #244759
Ventress Correctional Facility
P.O. Box 767
Clayton, AL  36016-0767

### CERTIFICATE OF SERVICE

I hereby declare that I have on this date caused a copy of the foregoing document to be served upon all parties to this action by placing copies of the same in the U.S. Mail, postage prepaid by me on this 18 day of April, 2007.

CC: Office of the Clerk
    United States District Court
    P.O. Box 711
    Montgomery, AL  36101-0711

_Rodney Dean_
Rodney Dean, Plaintiff