IN THE  UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

RODNEY C. DEAN, #244 759                    *

        Plaintiff,                          *

        v.                                  *           2:07-CV-342-WKW
                                                              (WO)
WARDEN J.C. GILES, *et al.*,                *

        Defendants.                         *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Rodney Dean, filed this *pro se* civil rights action under  42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) *et seq.*,[1] against Warden J.C. Giles, Sergeant Carolyn Longmire, Prison Health Services, Inc., Nurse Barbara Liebe,[2] and Commissioner Richard Allen, in their individual and official capacities.  Plaintiff asserts constitutional violations related to his previous confinement at the Ventress Correctional Facility ["Ventress"] located in Clayton, Alabama.[3]  Specifically, Plaintiff  claims that the correctional defendants violated his rights

_____

[1]  Plaintiff actually requests relief under the Religious Freedom Restoration Act of 1993 (RFRA). The court, however, considers the claim as being brought pursuant to RLUIPA in view of the fact that Congress enacted RLUIPA following the Supreme Court's decision in *City of Boeme v. Flores,* 521 U.S. 507(1997), which struck down RFRA insofar as it applied to states and localities.

[2]  Plaintiff identified Nurse Liebe in the complaint as "B. Luke."

[3]  Since filing this complaint Plaintiff has been released from custody.

under the First Amendment and RLUIPA as a result of the Alabama Department of Corrections' ["ADOC"] grooming policy which resulted in him being "scalped" every time he went to the chow hall when popular meals were served.  Plaintiff further claims that the manner in which his hair was cut violated his Eighth Amendment rights, that he was subjected to a different hair length restriction than that applied to female inmates in violation of his Fourteenth Amendment right to equal protection, and that he was subjected to unconstitutional conditions of confinement  and inadequate medical treatment also in violation of his Eighth Amendment rights. Plaintiff requests trial by jury and seeks monetary damages and injunctive relief for the alleged violations.[4] (*See Doc. Nos. 1, 2, 41.*)

Defendants filed answers, special reports, and supporting evidentiary materials addressing Plaintiff's claims for relief.   In these documents, the correctional defendants argue that they are entitled to summary judgment because Plaintiff has failed to demonstrate that he is entitled to relief on challenges to the  prison conditions about which he complains. The medical defendants assert that the medical claims presented against them are due to be dismissed because Plaintiff failed to exhaust an administrative remedy available to him at Ventress.

Pursuant to the orders entered in this case and governing case law, the court deems

---

Plaintiff affirmed at the oral argument held in this matter that the relief he sought was that originally requested in his complaint and statement of facts in support thereof.  (*See Doc. Nos. 1, 2*)

2

it appropriate to treat Defendants' written reports as motions for summary judgment. (*See Doc. No. 30*); *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (Although an exhaustion defense "is not ordinarily the proper subject for a summary judgment [motion,]" the defense is appropriate for summary judgment when the evidence demonstrates administrative remedies "are absolutely time barred or otherwise clearly infeasible."). Thus, this case is now pending on Defendants' motions for summary judgment. Upon careful consideration of the record as a whole, including the oral argument heard on November 5, 2009,[5] the court concludes the Defendants' motions for summary judgment are due to be granted.

## I. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c), as amended December 1, 2007, (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

---

The court heard oral argument on Plaintiff's challenge to the ADOC's grooming policy under RLUIPA .

any material fact and that the movant is entitled to judgment as a matter of law.").[6]   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants Allen, Giles, and Longmire have met their evidentiary burden. Additionally, Defendants PHS, Inc., and Liebe have met their evidentiary burden and demonstrated the absence of a genuine issue of material fact with respect to Plaintiff's failure to exhaust  administrative remedies with respect to his allegations of inadequate medical care. Thus, the burden shifts to Plaintiff  to establish, with evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2)

---

Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (citation omitted). Consequently, to survive the properly supported motions for summary judgment filed in this case, Plaintiff is required to produce "sufficient evidence" which would be admissible at trial supporting his claims of various constitutional violations. *Id*.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).

Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant.

*United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material

fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff has failed to demonstrate requisite genuine issues of material fact so as to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

*A. Injunctive Relief*

Plaintiff is no longer in custody of the Alabama Department of Corrections. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated, his requests

for injunctive and/or declaratory relief have been rendered moot.

### B. *Official Capacity Claims*

As noted, Plaintiff seeks to sue Defendants in their official as well as their individual capacities. "[A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from constitutional claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).[7]

In light of the foregoing, it is clear that Defendants, as state officials entitled to Eleventh Amendment immunity when sued in their official capacities. Defendants are, therefore, entitled to absolute immunity from the constitutional claims asserted by Plaintiff

---

The court notes that inmates may bring RLUIPA claims for nominal damages (but not compensatory damages or punitive damages absent a showing of physical injury) against a defendant in his/her official capacity. *See Smith v. Allen,* 502 F.3d 1255, 1270-71, 1275-76 (11th Cir. 2007), *reh'g denied and reh'g en banc denied*, 277 Fed.Appx. 979 (11th Cir. Mar. 3, 2008) (Table No. 05-16010-cc). Inmates may not, however, bring a claim for monetary damages against a prison official in his/her individual capacity. *Id.* at 1275.

against them in their official capacities.

*C. Commissioner Allen*

To the extent Plaintiff names Richard Allen on the basis of his position as Commissioner of the Alabama Department of Corrections, he is entitled to no relief. Plaintiff has in no way linked Commissioner Allen to the constitutional allegations set forth in his complaint. Further, he has not produced any evidence to show that Defendant Allen is directly responsible for or personally participated in establishing the alleged unconstitutional conditions about which he complains.

The law in this circuit is well settled that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003) (internal quotation marks and citation omitted). Thus, supervisory defendants are liable only if they personally participated in the allegedly unconstitutional conduct or if there is "a causal connection between [their] actions ... and the alleged constitutional deprivation." *Id. See also West v. Tillman,* 496 F.3d 1321, 1328 (11th Cir.2007). Plaintiff must present sufficient evidence of either (1) a "custom or policy [that] result[s] in deliberate indifference to constitutional rights or ... facts [that] support an inference that the supervisor[s] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so;" or (2) "a history of widespread abuse [that] put[ ] the

10

responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone,* 326 F.3d at 1360 (internal quotation marks and citations omitted) (second alteration in original). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted).

Plaintiff does not allege that Commissioner Allen was personally involved in any of the alleged constitutional deprivations. Moreover, Plaintiff's assertions do not establish the causal connection necessary to hold Commissioner Allen responsible for Plaintiff's alleged constitutional deprivations. The court, therefore, concludes that Defendant Allen's motion for summary judgment on Plaintiff's constitutional claims is due to be granted.

## D.  Conditions Claim

Plaintiff describes a variety of conditions in existence during his confinement at Ventress which he maintains amounted to a violation of his Eighth Amendment rights. Variously these conditions and problems included an inadequate hot water supply, a failure to use bleach in the laundry, unhygienic barber services including failing to sanitize clippers, failing to use clipper guards, and cutting inmate hair in close proximity to the chow hall, and disregard of shaving profiles.  (*Doc. Nos. 1, 2.*)

Defendants Giles and Longmire deny that Plaintiff was subjected to unconstitutional

11

conditions of confinement during his incarceration at Ventress.  According to these defendants there has never been a problem with hot water in D-Dorm.  Defendant Giles states further that D-Dorm does not have mixer valves, [8] and thus, the water temperature is controlled simply by adjusting the hot and cold nozzles in the shower.  Defendants Giles and Longmire deny that staph is prevalent in D-Dorm.  When an inmate is diagnosed with a staph infection, the inmate is separated from contact with other inmates until he is no longer contagious.  Defendants Giles and Longmire further maintain that the dorms, including floors, wall, commodes, and sinks are cleaned daily with bleach and disinfectant, that bleach is used to clean all clothes, and that the temperature of the water to clean laundry is in compliance with state sanitation standards.  All shaving profiles are honored but Defendants Giles and Longmire indicate that when an inmate's beard is found to be over an eighth of an inch long he is ordered to get in compliance with the profile.[9]  Finally, Defendants Giles and Longmire deny that inmate barbers cut hair near the entrance or exit doors to the chow hall during feeding time.   In sum, Defendants Giles and Longmire state that Plaintiff was not exposed to either inhumane or unsanitary conditions during his incarceration at Ventress.  (*Doc. No. 27, Exhs. A, C, E.*)

---

Plaintiff asserts in a statement of facts attached to his complaint that a hot water exchanger was replaced in D-Dorm and the mixer valves which keeps the water distributed or "mixed up" were not replaced because of cost considerations. (*See Doc. No. 2 at pg. 5.*)

Plaintiff's shaving profile was for an eighth of an inch.  (*Doc. No. 28, Exh. A.*)

12

The Constitution proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). There is no "static test" for determining which conditions violate the Constitution. *Id*. at 346. Whether a violation exists requires a fact intensive determination of what conditions exist and whether objectively and subjectively the conditions offend the Constitution by amounting to seriously sufficient deprivations to which officials were deliberately indifferent. *See e.g., Farmer v. Brennan*, 511 U.S. 825 (1994). Only actions which deny inmates "the minimal civilized measure of life's necessities," are grave enough to establish constitutional violations. *Rhodes*, 425 U.S. at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991) (overcrowding, without more, does not rise to the level of a constitutional violation).

A prison official has a duty under the Eight Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)); *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In order to demonstrate the objective component of an Eighth Amendment violation with respect to conditions of confinement, a prisoner must prove that he was denied the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 832. The challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to his future health."

13

*Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004).   The subjective component requires a prisoner to prove that the prison official acted with "deliberate indifference" in disregarding that risk by showing that an official knew the inmate faced a "substantial risk of serious harm" and with such knowledge, disregarded that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S.  at 828, 834, 837.

In this case, Plaintiff contends that he was subjected to unconstitutional conditions of confinement at Ventress.  All of the conditions or problems identified by Plaintiff are, unfortunately, problems of prison life in general, a life which while not comfortable must be humane.  *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007).  Plaintiff has failed to establish that the conditions about which he complains caused him serious harm nor can the problems he describes be considered "abuses." Moreover, Plaintiff has failed to produce evidence which shows that the correctional defendants  knew of an obvious risk of serious harm to him and disregarded that risk, *Farmer* 511 U.S. at 837, or  that their actions resulted in the denial of the minimal civilized measure of life's necessities.  *Rhodes*, 452 U.S. at 347. The mere fact that the conditions and problems described by Plaintiff existed is insufficient to demonstrate a constitutional violation.  Consequently, Defendants Giles' and Longmire's motion for summary judgment on Plaintiff's claims challenging the conditions of confinement at Ventress is due to be granted.

*E.  Challenges to Hair Length*

_____*i. The Equal Protection Clam*

Plaintiff asserts an equal protection violation with respect to the length of hair allowed for male inmates which he complains is shorter than the length of hair allowed for female inmates. (*Doc. No. 2*.) Plaintiff's equal protection challenge entitles him to no relief. Disparate hair regulations for male and female inmates have consistently survived equal protection challenges. *Hill v. Estelle*, 537 F.2d 214, 215-216 (5th Cir. 1976) (footnotes omitted) (difference in application of hair length and other regulations "based on sex is [not] a constitutional violation of equal protection . . . The regulations impinge on no fundamental right and create no suspect classification. The disparity between the regulations for male and female inmates is not so grievous as to make them arbitrary or unreasonable, cruel or unusual, and the wisdom of the disparate regulations will be left to the judgment of [custodial] penologists.");[10] *Longoria v. Dretke*, 507 F.3d. 898, 904-904 (5th Cir. 2007) (equal protection claim based on differing grooming regulations for male and female inmates "is without merit."); *Diaz v. Collins*, 872 F. Supp. 353, 359 (E.D. Tex. 1994) (same); *Fegans v. Norris*, 537 F.3d 897, 906 (8th Cir. 2008) (different security concerns presented by male and female inmates provide sufficient basis for disparate hair length rules and such rules did not

_____

The decision issued in *Hill* is binding precedent for this court. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.").

violate plaintiff's constitutional right to equal protection); *Campbell v. Purkett*, 957 F.2d 535, 537 (8th Cir. 1992) (grooming regulation forbidding long hair for male inmates survives an equal protection challenge because regulation is reasonably related to penological interests); *Pollock v. Marshall*, 845 F.2d 656, 659-660 (6th Cir. 1988) (hair length restrictions that differ for male and female prisoners are legitimate in furthering prison security and do not violate an inmate's equal protection rights); *Dreibelbis v. Marks*, 742 F.2d 792, 795-796 (3rd Cir. 1984) (differing hair length standards for men and women prisoners not violative of equal protection because the standards "rest[] on real and substantial differences" among men and women); *McClelland v. Sheriff's Deputy*, 2001 WL 34826228 *8-*9 (E.D. Va. 2001) (differing hair length standards for male and female inmates who inherently pose disproportionate security concerns did not violate Equal Protection Clause). Accordingly, Defendants Giles and Longmire are entitled to summary judgment on Plaintiff's equal protection claim.

*ii. First Amendment/RLUIPA*

Plaintiff argues that the correctional defendants violated his rights under the First Amendment and RLUIPA both of which are designed to safeguard the right to practice one's religion by limiting the government's ability to interfere with religious expression. In support of his allegation, Plaintiff asserts that he is an adherent of the Native American religion and that the grooming policy enforced  at Ventress caused him to violate a particular aspect of

his religion and, specifically, that his hair should remain uncut. In support of his claim, Plaintiff complains that he was "scalped" by prison barbers every time he went to the prison chow hall on days that popular meals were served which included French fries, hot dogs, fish, *etc*. (*Doc. No. 34 at pg. 3; see also Doc. No. 2 at pg. 3*.)   Plaintiff further indicates in his complaint that inmates without money for the barber had "to put up with this type of cruel treatment" which he contends was humiliating when "your wife and/or friend has to see you this way." (*See Doc. No. 2 at pg. 3; see also Doc. No. 34 at pg. 3*.)

Congress enacted RLUIPA, in part, to protect inmates and other institutionalized persons from substantial burdens in freely practicing their religions.   Under the provisions of 42 U.S.C. § 2000cc-1(a) 2000

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person:
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a) (2000).

To succeed on a primary RLUIPA claim, a plaintiff must first present a *prima facie* case.

> To establish a prima facie case under section 3 of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious

exercise was substantially burdened . . . The plaintiff "bear[s] the burden of persuasion on whether the . . . government practice that is challenged by the claim substantially burdens the exercise of religion." . . . If the plaintiff succeeds in demonstrating a prima facie case, the government must then demonstrate that the challenged government action is "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." . . . In contrast, if the plaintiff fails to present evidence to support a prima facie case under RLUIPA, the court need not inquire into whether the governmental interest at stake was compelling.

*Smith*, 502 F.3d at 1276.

With respect to an inmate's claim brought under the First Amendment, a court is required to analyze prison officials' actions in the context of their policies and the standards promulgated in *Turner v. Safley*, 482 U.S. 78 (1987). A policy is "valid if it is reasonable related to legitimate penological interests." *Id.*, at 89. "[S]uch a standard is necessary if 'prison administrators . . . , and not the courts [are] to make the difficult judgments concerning institutional operations.'" *Id.* (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128 (1977)).

The court heard oral argument on Plaintiff's challenge to the grooming policy at Ventress which the court understands Plaintiff to claim infringed upon and substantially burdened his right to freely practice the Native American religion. Although Plaintiff used the term "scalped" in his complaint and during oral argument, he further explained during the hearing that his reference to "scalping" meant that inmate barbers at Ventress were essentially permitted by prison authorities to shave inmates' hair very close to the scalp and closer even than grooming policy required. According to Plaintiff, prison regulations allow

18

a hair length of a half of an inch.

When Plaintiff entered the ADOC he filled out forms and provided, among other things, personal information which included listing "Christianity" as his religious preference. At a later unspecified time, Plaintiff states he modified his religious preference by listing "Native American/Christian," but concedes that at no time during his incarceration at Ventress did he specifically communicate to prison officials or inmate barbers that he was an adherent of the Native American religion. Plaintiff agues, however, that prison officials should have known he practiced the Native American faith because he received packages in the mail which contained articles relevant to the Native American religion and because he attended activities on the Native American ceremonial grounds at Ventress.

While the court does not question the sincerity of Plaintiff's religious beliefs, his claim under both the First Amendment and RLUIPA fails for a fundamental reason; he has not come forward with any evidence showing that the correctional defendants violated his rights. Plaintiff complains that he was forced to cut his hair against his religious beliefs. The correctional defendants concede that Plaintiff was directed to keep his hair cut in accordance with the ADOC's grooming policy[11] but they offer a simple and persuasive explanation for doing so; Plaintiff failed to identify himself to them as an adherent of the Native American religion. Further, Plaintiff never mentioned this fact to anyone, including the inmate barbers,

---

The prison regulation regarding personal appearance directs that male inmates' hair be neat, well-groomed, and with sideburns no longer than the middle ear. (*Doc. No. 44, Exh. 1.*)

when he was ordered to have his hair cut nor did he complain about or grieve the matter to prison officials.

Plaintiff did not provide prison officials with sufficient information or awareness about his religious beliefs before filing this complaint.   To keep his religious beliefs confidential but at the same time initiate a complaint for failing to receive a special accommodation for those beliefs while in jail is not tenable. Plaintiff may have a sincere religious belief that his hair should not be cut but he clearly did not communicate such belief to correctional personnel.  If the grooming policy at Ventress incidentally affected his ability to exercise his religious belief of which the correctional defendants were unaware, such unintentional interference with his religious exercise does not amount to actionable conduct in this § 1983 action.  Unless the correctional defendants  took action to impede Plaintiff's exercise of his religious beliefs - and it is undisputed that they did not knowingly do so - they could not have violated his rights under the free exercise clause or RLUIPA. For these reasons, the correctional defendants' motion for summary judgment on Plaintiff's First Amendment and RLUIPA claims is due to be granted.[12]

---

Given the court's disposition of Plaintiff's challenge to the ADOC's grooming policy regarding male inmate hair length, Defendants' contention that Plaintiff's religious beliefs would still not entitle him to an exemption from the requirements of the grooming policy due to various legitimate policy considerations is not before the court for resolution.  Nonetheless,  in the face of identical challenges made pursuant to the Free Exercise Clause of the First Amendment, correctional grooming policies have repeatedly been upheld by federal courts, including the Eleventh Circuit Court of Appeals, as reasonably related to legitimate penological interests of maintaining security and promoting cleanliness.  *See e.g.,* *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996) (upholding a prison hair length regulation under the First Amendment and even more rigorous least restrictive means standard because correctional officials "have a compelling interest in security and order" and the challenged regulation constituted "least restrictive means" of satisfying these interests); *Martinelli v. Dugger*, 817 F.2d 1499, 1506-1507

*iii. Cruel and Unusual Punishment.*

To the extent Plaintiff asserts a claim that having his hair cut subjected him to cruel and unusual punishment, he is entitled to no relief.  The undisputed evidence before the court shows that the ADOC has policies and regulations regarding grooming and appearance, in part, because of safety and security concerns. (*See Doc. Nos. 40, 44.*)  "[T]he legitimate government interest in the order and security of penal institutions justifies the imposition of certain restraints."  *Procunier*, 416 U.S. at 412-413. Enforcement of a valid security regulation is not punishment for the purposes of an inmate's right to due process.  *See Solomon v. Zant*, 888 F.2d 1579, 1582 (11th Cir. 1989).  Although Plaintiff complains that being subjected to having his hair cut "humiliated" him in front of relatives and friends, there is no evidence before the court that it resulted in the unnecessary and wanton infliction of

---

(11th Cir. 1987), *abrogated on other grounds Harris*, 97 F.3d 499  (prison hair length rule virtually identical to rule addressed in *Harris* upheld as constitutional because rule was least restrictive means of advancing substantial government interests in maintaining prison security and identifying escapees); *Shabazz v. Barnauskus*, 790 F.2d 1536, 1540 (11th Cir.), (affirming decision of district court that regulation prohibiting beards on inmates "serve[s] a legitimate penological interest in preventing escape" and constitutes the least restrictive alternative available); *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007) (grooming policy which prohibited male inmates from growing long hair not violative of the Free Exercise Clause); *Gooden v. Crain*, 389 F. Supp.2d 722, 725 (E. D. Tex. 2005) ("[A]ny challenge to the prison system's grooming policy based on the Free Exercise Clause is frivolous."); *Green v. Polunsky*, 229 F.3d 486 (5th Cir. 2000) (prison grooming policy requiring inmates to keep their hair cut short and faces clean shaven reasonably related to legitimate penological interests and therefore did not deprive inmate free expression of religion under the First Amendment); *Hamilton v. Schriro*, 74 F.3d 1545, 1551 (8th Cir. 1996) (hair length regulation did not violate Native American prisoner's constitutionally guaranteed right to free exercise of religion); *Campbell v. Purkett*, 957 F.2d 535, 537 (8th Cir. 1992) (finding prison hair length rule applicable to follower of Nazarite religion constitutional);  *Iron Eyes v. Henry*, 907 F.2d 810, 814-816 (8th Cir. 1990) (prison regulation prohibiting hair longer than base of shirt collar did not run afoul of the Free Exercise Clause as regulation was reasonably related to legitimate penological interests).

pain prohibited by the Eighth Amendment.  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991);

*Farmer*, 511 U.S. at 834; *Whitley v. Albers*, 475 U.S. 312, 319 (1976).  Defendants Longmire

and Giles are, therefore, entitled to summary judgment on this challenge to the grooming

policy.

*F.  Failure to Comply with Regulations*

The court considers Plaintiff's complaint  to contain an argument that Defendants

Giles and Longmire violated their own rules and regulations by allowing the cutting of

inmate hair in close proximity to the chow hall and by allowing inmate hair to be cut shorter

than required by the prison regulations.  While a violation of a state or federally-created

liberty interest can amount to a violation of the Constitution, not every violation of state or

federal law or state or federally-mandated procedures is a violation of the Constitution.  *See*

*Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir.

1982); *Brown v. Dodson,* 863 F. Supp. 284 (W.D. Va. 1994).  Likewise, not every deviation

from an agency's rules violates of the Constitution.  *Smith v. State of Georgia*, 684 F.2d 729

(11th Cir. 1982); *see also Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir.

1987). Here, Plaintiff's claim regarding prison officials' failure to follow and/or enforce their

own prison regulations does not state a claim of constitutional magnitude. *Sandin v. Conner*,

515 U.S. 472 (1995); *see also Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167,

1168 (5th  Cir. 1990); *Baker v. McCollan*, 433 U.S. 137, 146 (1979).

*G.  The Claims Against the Medical Defendants*

Plaintiff challenges the constitutionality of medical treatment provided to him while at Ventress for sores on his face and back which he complains turned to staph infections. In response to this complaint, the medical defendants deny Plaintiff's allegation and likewise maintain that his complaint against them is subject to dismissal because he failed to exhaust an administrative remedy available to him at Ventress which is a mandatory precondition to filing this cause of action. (*Doc. No. 28, Exhs. A, C*); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006).

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325

(11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006).  Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***." *Woodford*, 548 U.S. at 93, 126 S.Ct. at 2387 (emphasis added).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings....  Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage."  548 U.S. at 90-91, 93, 126 S.Ct. at 2386-2387.  The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him.  548 U.S. at 83-84, 126 S.Ct. at 2382; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).

The record in this case is undisputed that the health care provider for the Alabama Department of Corrections at the time of Plaintiff's incarceration provided a grievance procedure for inmate complaints related to the provision of medical treatment. (*Doc. No. 28,*

*Exh. C.*)  The evidentiary materials submitted by the medical defendants demonstrate that Plaintiff failed to file the requisite grievance with respect to the actions about which he complains in the instant complaint. (*Id. and Exh. A.*)  Plaintiff does not dispute his failure to exhaust the administrative remedy available in the prison system prior to filing this case. The court, therefore, concludes that the claims presented in this cause of action are subject to dismissal as Plaintiff failed to properly exhaust an administrative remedy available to him which is a precondition to proceeding in this court on his claims.  *Ngo*, 548 U.S. at 87-94.

Plaintiff is no longer incarcerated at Ventress.  Thus, the administrative remedy provided by the medical defendants at that facility is no longer available to Plaintiff.  Under such circumstances, dismissal with prejudice is appropriate.  *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Keirk*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (Inmate's "federal lawsuits . . . properly dismissed with prejudice" where previously available administrative remedies had become unavailable and no special circumstances justified the failure to exhaust.).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants Allen, Giles, and Longmier's motion for summary judgment (*Doc. Nos. 27, 40*) be GRANTED;

2. Plaintiff's complaint against Defendants Allen, Giles, and Longmire be DISMISSED with prejudice;

3. Defendants PHS, Inc., and Liebe's motion for summary judgment (*Doc. No. 28*) be GRANTED to the extent they seek dismissal of this case due to Plaintiff's failure to properly exhaust administrative remedies previously available to him at the Ventress Correctional Facility;

4. The complaint against Defendants PHS, Inc., and Liebe be DISMISSED with prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for Plaintiff's failure to exhaust administrative remedies available to him during his confinement at the Ventress Correctional Facility; and

5. Judgement be ENTERED in favor of Defendants and against Plaintiff.

It is further

ORDERED that on or before **December 4, 2009** the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon the grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 19th day of November 2009.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

27